### UNITED STATES DISTRICT COURT
### MIDDLE DISTRICT OF GEORGIA
### COLUMBUS DIVISION

| | | |
|---|---|---|
| GLOBAL PAYMENTS INC., a Georgia corporation, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | CASE NO: _____ |
| KELLIE JOSEPH, | ) ) ) | |
| Defendant. | ) ) ) | |

## COMPLAINT

Plaintiff Global Payments Inc. ("Global") files this Complaint against its former employee Kellie Joseph ("Joseph") for breach of contract, violation of the Georgia Trade Secrets Act, breach of the duty of loyalty, and conversion, and seeks preliminary and permanent injunctive relief, money damages, and attorneys' fees and costs, and states as follows:

## NATURE OF THE ACTION

1.

Global is a leading worldwide provider of payment technology services, embedded e-commerce solutions, integrated payment solutions, point of sale payment solutions, multi-platform payments solutions, and software solutions.  Specifically, Global provides payment solutions for credit cards, debit cards, electronic payments, and check-related services in the financial services, gaming, government, healthcare, professional services, restaurant, retail, education, not-for-profit and utilities industries.  It provides services across a range of channels to merchant customers, including, but not limited to, authorization, electronic draft capture, file transfers to facilitate funds

settlement and other related services, such as payroll, chargeback and retrieval resolution, point of sale solutions, and software integration.

2.

In September 2015, Joseph was hired by Heartland Payment Systems, Inc. ("Heartland" or "HPS"), which was subsequently acquired by Global in April 2016, into the position of Relationship Manager.  Joseph was promoted to Territory Manager in 2017 and served in this position until June 2019 when she returned to a Relationship Manager role.  In both roles, Joseph was responsible for driving revenue growth and bringing in new business prospects and merchant customers, coordinating business dealings with merchant customers, providing after-sales service for the duration of the customer relationship, marketing additional products and services to new and existing customers, assessing merchant customers' future business needs, forecasting customers' transaction volumes, and working to develop merchant customer bases in new vertical market channels identified by Heartland and/or Global.

3.

To incentivize Joseph's performance, she was highly compensated in commissions and valuable stock grants, including the Restricted Stock Award Certificate dated April 20, 2019 (the "2019 Stock Award").  A true and authentic duplicate of the Restricted Stock Award dated April 20, 2019 is attached hereto as Exhibit A.  As a condition of receiving the restricted stock, Joseph agreed to a restrictive covenant prohibiting her from soliciting or attempting to solicit Global's customers with whom she had direct dealings or had responsibility for providing sales services for a period of twelve (12) months after termination of her employment for any reason.  Ex. A § 15.1.

4.

On or about April 2, 2021, Joseph resigned her employment and began working for Green Card Payments, LLC d/b/a PayNation ("PayNation") as, upon information and belief, its Director of Integrated Solutions.  One day prior to her resignation, Joseph removed Global's confidential customer and trade secret information, including by forwarding at least ***one hundred seventy-four separate emails*** containing highly sensitive customer information concerning at least ***one hundred eighteen merchant customers***, as well as a prospective customer list, from her former Global email address to her new PayNation email address, for her own benefit and the benefit of PayNation.

5.

Upon information and belief, thereafter, Joseph began soliciting Global's customers to move their payment processing business to PayNation.  PayNation, like Global, is in the payment technology and digital commerce industry and specifically offers customers "omni-channel solutions" to "capture payments anywhere and any way, all from one source . . . [and] enable secure commerce from any point of interaction."[1]  Upon information and belief, Global has lost at least five customer accounts due to Joseph's violations of her post-employment obligations, and Global's ongoing investigation has identified eight other customer accounts that Global believes were lost because of Joseph's unlawful solicitation.  Global sold or provided its products or services to these former merchant customers within twelve (12) months of Joseph's termination of employment with Global.

6.

By removing Global's confidential and trade secret information and, upon information and belief, using that information to solicit Global's customers, Joseph has breached the 2019 Stock

---

[1] https://paynation.us/ (last visited May 24, 2021).

Award, violated the Georgia Trade Secrets Act, breached her duty of loyalty to Global, and unlawfully converted Global's property. Accordingly, Global brings this action and is entitled to preliminary and permanent injunctive relief to prevent unfair competition by Joseph and irreparable harm to Global, compensatory damages, punitive damages, and attorneys' fees and costs.

## PARTIES

### 7.

Global Payments Inc. is a Georgia corporation with its principal place of business in Atlanta, Georgia.

### 8.

Upon information and belief, Joseph is a citizen of Indiana who resides at 2453 Silver Rose Drive, Avon, Indiana 46123.

## JURISDICTION, VENUE, AND GOVERNING LAW

### 9.

This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because there exists complete diversity of citizenship between the parties (Georgia and Indiana) and the amount in controversy exceeds $75,000. Specifically, Global seeks to recover from Joseph significant compensation and stock it paid to her, as consideration for the restrictive covenants she violated, disgorgement of her unlawful gains derived from her misappropriation of Global's trade secrets, as well as attorneys' fees and costs associated with enforcing these restrictive covenants. In addition, to the extent Global obtains the preliminary and permanent injunctive relief it seeks in this action, Joseph will be prohibited from soliciting Global's customers and will result in Joseph's

loss of, on information and belief, in excess of $75,000 in compensation.  Regardless, the combined value of the injunctive relief and damages Global seeks far exceeds $75,000.

10.

This Court has personal jurisdiction over Joseph because she consented to personal jurisdiction in the 2019 Stock Award.  Ex. A § 11 ("Grantee hereby agrees and submits to jurisdiction in the state or federal courts of the State of Georgia and waives objection to such jurisdiction.").

11.

Joseph is also subject to personal jurisdiction in this Court because she was employed by a company with a principal place of business in Georgia, contracted with Global in Georgia (including, but not limited to, the terms and conditions of the 2019 Stock Award), communicated with Global's employees in Georgia, and accessed and removed Global's competitively sensitive confidential customer information and trade secrets located in Georgia.

12.

Venue is proper in this Court because the parties signed binding forum-selection clauses designating this Court as a proper forum for resolving this dispute.  *Id*.

13.

Under the 2019 Stock Award, this action is governed by Georgia law.  *Id*.

14.

Georgia has a legitimate and material interest in enforcing restrictive covenants entered into by companies headquartered here.  Given that Global is headquartered in Georgia, and has significant business operations in Muscogee County, there is a valid and legitimate basis for the 2019 Stock Award to have a Georgia forum selection clause and choice of law provision.

## JOSEPH'S EMPLOYMENT WITH GLOBAL

15.

The payment technology and digital commerce industry is highly competitive. Companies like Global and PayNation compete directly for customers such as small merchants, mid-size companies, large corporations, educational institutions, and not-for-profit organizations. For that reason, Global's confidential, proprietary, and trade secret information, and its goodwill and customer relationships, are highly valuable. The foregoing includes, but is not limited to, Global's contracts, pricing, volume, margin, and other financial information about its customers and prospective customers.

16.

From September 2015 until April 2021, Joseph was employed by Heartland Payment Systems, Inc., and, after its 2016 acquisition, by Global, as a Relationship Manager and Territory Manager. In both roles, Joseph was a sales employee for Global's payment solutions platform business, including its point-of-sale hardware and software systems for merchant customers. Joseph was responsible for regularly soliciting prospective business customers for Global, coordinating business dealings for merchant customers and prospective customers, marketing Global's payment processing solutions, assessing customers' future business needs, and assisting in marketing and selling Global's products to new vertical market channels targeted by Global.

17.

In this role, Joseph had access to and knowledge of Global's confidential and proprietary information and trade secret information, including, but not limited to, Global's specialized customer lists, prospective customer lists, pricing, volume, and other financial information concerning those customers and prospective customers, and sales and marketing plans for Global's

existing and prospective customer bases.

18.

In 2019, Joseph accepted a grant of restricted Global stock pursuant to terms and conditions of the 2019 Stock Award.  The 2019 Stock Award conditioned Joseph's receipt of the stock on her agreement to the terms and conditions set forth in that agreement, including certain restrictive covenants.

19.

In the 2019 Stock Award, Joseph acknowledged and agreed that she would have access to Global's confidential and trade secret information and that the restrictive covenants to which she agreed were fair, reasonable, and necessary to protect such information:

> As a condition of Grantee's receipt of this Award, Grantee agrees to the following restrictions. Grantee acknowledges and agrees that as a result of Grantee's employment with the Company or an Affiliate, Grantee's knowledge of and access to confidential and proprietary information, and Grantee's relationships with the Company's or its Affiliate's customers and employees, Grantee would have an unfair competitive advantage if Grantee were to engage in activities in violation of this Agreement. Grantee also acknowledges and agrees that the covenants in this Section 15 are necessary to protect the trade secrets of Company or an Affiliate.

Ex. A § 15.

20.

In the 2019 Stock Award, Joseph agreed not to solicit customers with whom she had dealings or for whom she had responsibility on behalf of Global for a period of twelve (12) months immediately following the termination of her employment for any reason:

7

During the term of Grantee's employment and for a period of twelve (12) months immediately following the termination of Grantee's employment for any reason, Grantee shall not, directly or indirectly, on Grantee's own behalf or on behalf of any other individual, corporation, partnership, joint venture, limited liability company, association or other entity or otherwise, solicit, divert or take away or attempt to solicit divert or take away any Protected Customer for the purpose of providing or selling Competitive Services; provided however, that the non-solicitation restriction contained in this Section 15.1 shall only apply to those Protected Customers (a) with whom Grantee, alone or in conjunction with others, had business dealings on behalf of the Company or an Affiliate during the twelve (12) month period immediately preceding the termination of Grantee's employment or any earlier date of any alleged breach by Grantee of the restriction in Section 15.1 hereof, and/or (b) for whom Grantee was responsible for supervising or coordinating the business dealings between the Company or an Affiliate and the Protected Customer during the twelve (12) month period immediately preceding the termination of Grantee's employment or any earlier date of any alleged breach by Grantee of the restriction in Section 15.1 hereof.

Ex. A § 15.1.

21.

The 2019 Stock Award defined "Competitive Services" as follows:

[S]ervices competitive with the business activities engaged in by the Company or an Affiliate as of the date of termination of Grantee's employment for any reason or any earlier date of an alleged breach by Grantee of the restrictions in Section 15 hereof, which include, but are not limited to, the provision of products and services to facilitate or assist with the movement in electronic commerce of payment and financial information, merchant processing, merchant acquiring, credit and debit transaction processing, check guarantee and verification, electronic authorization and capture, terminal management services, purchase card services, financial electronic data interchange, cash management services, and wire transfer services.

Ex. A § 15.3(a).

22.

The 2019 Stock Award defined "Protected Customer" as follows:

[A]ny individual, corporation, partnership, joint venture, limited liability company, association, or other entity or enterprise to whom the Company or an Affiliate has sold or provided its products or services, or actively solicited to sell its products or services, during the twelve (12) months prior to termination of Grantee's employment for any reason or any earlier date of an alleged breach by Grantee of the restrictions in Section 15 hereof.

Ex. A § 15.3(b).

23.

In the 2019 Stock Award, Joseph further acknowledged and agreed that if she breached or threatened to breach the restrictive covenants contained therein, "the Company shall be entitled to enjoin, preliminarily and permanently, Grantee from violating or threatening to violate the covenants . . . it being agreed that any breach or threatened breach of the covenants would cause irreparable injury to the Company and that money damages would not provide an adequate remedy to the Company."  Ex. A § 15.4.

**JOSEPH REMOVES GLOBAL'S CONFIDENTIAL AND TRADE SECRET INFORMATION AND SOLICITS GLOBAL'S CUSTOMERS**

24.

On or about April 1, 2021, immediately prior to resigning her employment, Joseph removed Global's confidential and trade secret information by forwarding at least one hundred seventy-four (174) separate emails concerning one hundred eighteen (118) current merchant customers from her Global email to her new PayNation email.  Specifically, Joseph removed merchant customer application packets and/or Atlas forms from Global's proprietary, password-protected Atlas customer management database, which combines significant customer and financial data in a manner that is not publicly known or available.  These customer applications include, among other things, the merchant customer's contact information, business narrative, revenue and pricing information, sales methods, annual sales volume, card processing pricing information, chargeback rate, customer banking details (including routing numbers and account types), executed contracts and personal guarantees between the merchant customer and Global, order information regarding the customer's purchased software services and physical card processing equipment, rental contracts for the physical card processing equipment, if applicable,

and receipts for the same. Joseph also removed a lead list regarding prospective merchant customers operating in the construction vertical.

25.

For example, on April 1, 2021 at 10:53 p.m., Joseph forwarded an Atlas application packet for a current Indiana-based hospitality merchant customer from her Global email to her PayNation email—kjoseph@paynation.com. The Atlas application packet contained the customer-specific information referenced in the preceding paragraph. Joseph forwarded at least one hundred eighteen separate Atlas customer applications and/or Atlas forms to her PayNation address on April 1, 2021.

26.

On or about April 2, 2021, Joseph resigned her position with Global.

27.

Upon information and belief, since becoming employed by PayNation, Joseph has participated in the solicitation, recruitment, and enticing of Global customers for whom Global has sold or provided its products or services within twelve (12) months of Joseph's termination of employment. Upon information and belief, Joseph directly solicited a Midwest restaurant chain to transfer their payment processing business from Global to PayNation. This merchant customer's Atlas customer application was among the one hundred eighteen applications Joseph sent to her new PayNation email address before resigning her employment.

28.

Upon information and belief, Joseph has and is currently using Global's confidential information and trade secret information, including the removed Atlas customer applications, to solicit Global's customers. Upon information and belief, Joseph has solicited and caused at least

five merchant customers to move their payment processing business from Global to PayNation.

29.

By using Global's confidential and trade secret information to solicit Global customers on behalf of PayNation, Joseph is in breach of the non-solicitation covenants contained in the 2019 Stock Award, has violated the Georgia Trade Secrets Act, breached her duty of loyalty, and unlawfully converted Global's property.  In correspondence dated May 11, 2021, Global offered Joseph the opportunity to acknowledge her continued obligations to Global and come into compliance, but she failed to do so and has forced Global to seek injunctive and judicial relief from this Court.  Accordingly, Global is entitled to preliminary and permanent injunctive relief to prevent continuing, imminent irreparable harm to Global and to prevent Joseph from soliciting unfairly and using Global's trade secret information.

30.

Upon information and belief, Joseph has violated other provisions of the 2019 Stock Award and is also soliciting Global's prospective customers using Global's trade secret information, further damaging Global and supporting its request for preliminary and permanent injunctive relief.

## COUNT I

## BREACH OF CONTRACT – 2019 STOCK AWARD

31.

Global incorporates by reference the allegations contained in paragraphs 1 through 30 above as if they were restated verbatim.

32.

Joseph and Global entered into the 2019 Stock Award, which is a valid and enforceable

11

contract.

33.

Global performed its obligations under the 2019 Stock Award.

34.

The 2019 Stock Award prohibited Joseph from soliciting customers with whom she had dealings or for whom she had responsibility for providing sales services to on behalf of Global for a period of twelve (12) months immediately following the termination of her employment for any reason.  Ex. A § 15.1.

35.

Through the conduct alleged herein, including, but not limited to, removing Global's confidential and trade secret information and using the same to solicit Global's current customers to transfer their payment processing business to PayNation, Joseph breached the non-solicitation covenant in the 2019 Stock Award.  *Id*.

36.

Joseph expressly agreed that the non-solicitation restrictive covenant contained in the 2019 Stock Award is fair, reasonable, and necessary to protect Global's legitimate business interests, including, but not limited to Global's trade secrets, valuable confidential information, substantial relationships with Global's existing or prospective customers and clients, and customer goodwill associated with Global's ongoing business.

37.

The damages Joseph has caused and will cause by breaching the 2019 Stock Award cannot be fully remedied by monetary damages; *i.e.*, they are irreparable.  Indeed, Joseph specifically acknowledged and agreed in the 2019 Stock Award that her breach of the non-solicitation or other

restrictive covenant provisions would cause immediate, irreparable, and continuing damage to Global for which no adequate remedy at law exists.  *See* Ex. A § 15.4.  Joseph further acknowledged and agreed that Global is entitled to preliminary and permanent injunctive relief in the event she violates the non-solicitation or other restrictive covenants contained in the 2019 Stock Award.  *Id.*

## COUNT II

## VIOLATION OF THE GEORGIA TRADE SECRETS ACT, O.C.G.A. § 10-1-760, *et seq*.

38.

Global incorporates by reference the allegations contained in paragraphs 1 through 37 above as if restated verbatim.

39.

Global has developed, at great expense, information, technical and nontechnical data, formulas, patterns, compilations, programs, techniques, processes, financial data, financial plans, product plans, and lists of actual or potential customers or suppliers which are not commonly known by or available to the public and which derive economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by other persons who can obtain economic value from their disclosure or use, and are the subject of efforts that are reasonable under the circumstances to maintain their secrecy.

40.

In this action, Global's trade secret information consists of, but is not limited to, specialized, non-public customer lists, prospective customer lists, and financial and pricing information related to those customers and prospective customers, and other information related to Global's customers and prospective customers.  By virtue of her employment and positions as

13

a Relationship Manager and Territory Manager with Global, Joseph was provided access to these valuable trade secrets, including its client information database as well as key customer lists, prospective customer lists, financial information concerning those customers and prospective customers, pricing strategies, and pricing lists, all of which are unique to Global and not commonly known or available to the public and which Joseph accessed and forwarded to herself after she made her decision to resign from Global.  This confidential and proprietary information constitutes trade secrets under the Georgia Trade Secrets Act, O.C.G.A. § 10-1-760 *et seq*.

41.

Joseph used "improper means," as defined in O.C.G.A. § 10-1-761(1) to acquire Global's trade secrets and to disclose and use Global's trade secrets for the benefit of herself and PayNation without Global's express or implied consent.

42.

Joseph knew or had reason to know at the time of her improper use or disclosure of Global's trade secrets that her knowledge of the trade secrets was (i) derived through her utilization of improper means to acquire them, (ii) acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use, or (iii) derived from or through a person who owed a duty to Global (namely, herself) to maintain its secrecy or limit its use.

43.

As a result of Joseph's misappropriation of trade secrets Global has been damaged in an amount to be determined at trial and is entitled to recover compensatory damages, exemplary damages, preliminary and permanent injunctive relief, and attorneys' fees and costs.

## COUNT III

## BREACH OF DUTY OF LOYALTY

### 44.

Global incorporates by reference the allegations contained in paragraphs 1 through 43 above as if restated verbatim.

### 45.

As a Relationship Manager and Territory Manager for Global, Joseph owed Global a duty of loyalty, good faith, fidelity, and trust, which included, but was not limited to, a duty to not engage in disloyal acts in anticipation of future competition, such as misappropriating Global's confidential and trade secret information acquired during the course of her employment and using the same to solicit Global's customers immediately after resigning her employment with Global.

### 46.

Joseph breached her duty of loyalty to Global while still employed by Global by, among other things, wrongfully misappropriating Global's confidential and trade secret information immediately prior to her resignation and engaging in other acts and/or acquiring other interests adverse to Global that were inconsistent with promoting the best interests of Global at a time when Joseph was still on Global's payroll.

### 47.

As a direct and proximate result of Joseph's willful breach of her duty of loyalty, Global has suffered and will continue to suffer damages in the form of wages and benefits paid to, but not earned by, Joseph; lost business; lost revenue; lost goodwill; lost customers; compensatory damages; and other further damages, all in an amount to be proved at trial.

48.

Further, as a result of Defendant's knowing, willful, intentional, and malicious conduct, Global is entitled to an award of punitive damages, disgorgement of Joseph's unlawful gains, as well as an award of its attorneys' fees and costs.

## COUNT IV

## CONVERSION

49.

Global incorporates by reference the allegations contained in paragraphs 1 through 48 above as if restated verbatim.

50.

Joseph intentionally removed data from Global's computers and/or databases that contained Global's confidential and trade secret information.

51.

Joseph was obligated to return all data and documents upon termination of her employment with Global.

52.

Joseph failed to return all of Global's property, including Global's confidential and trade secret information, both upon her resignation and after Global specifically demanded the same and notified Joseph of her misconduct in its May 11 correspondence.

53.

Joseph's refusal to return Global's property in her possession is an exercise of wrongful dominion or control over Global's property and is detrimental to Global's rights as the owner of said property.

54.

As a direct and proximate result of Joseph's conversion, Global has suffered damages in an amount to be determined at trial.

55.

Based on the foregoing wrongful conduct by Joseph, which was knowing, willful, intentional, malicious, reckless, and/or grossly negligent, Global is entitled to an aware of punitive damages.

**COUNT V**

**INJUNCTIVE RELIEF**

56.

Global incorporates by reference the allegations contained in paragraphs 1 through 55 above as if they were restated verbatim.

57.

As Joseph has agreed, her violation of the restrictive covenants contained in the 2019 Stock Award has caused and will cause Global irreparable and immediate injury, loss, and damage, for which it has no adequate remedy at law.

58.

Unless Joseph is preliminarily and permanently enjoined and restrained, there is a substantial threat that she will continue to violate the restrictive covenants contained in the 2019 Stock Award, causing further irreparable injury to Global.

59.

There is a substantial likelihood that Global will prevail on the merits of the dispute given that the restrictive covenants contained in the 2019 Stock Award are reasonable and necessary to

protect Global's legitimate business interests and they fully comply with the Georgia Restrictive Covenants Act ("GRCA"), O.C.G.A. § 13-8-50, *et seq*.

60.

Global will suffer irreparable harm in the absence of an injunction through Joseph's violation of the 2019 Stock Award and continued solicitation of Global's customers.

61.

The threatened harm to Global without an injunction prohibiting Joseph from committing further breaches of the 2019 Stock Award far outweighs any potential harm to Joseph if she is enjoined.

62.

Enjoining Joseph from further breaching the 2019 Stock Award will not be adverse to the public interest.  Indeed, when the Georgia legislature enacted the GRCA, it recognized that the public interest would be served through the enforcement of restrictive covenants like those contained in the 2019 Stock Award.  *See* O.C.G.A. § 13-8-50 ("The General Assembly finds that reasonable restrictive covenants contained in employment and commercial contracts serve the legitimate purpose of protecting legitimate business interests and creating an environment that is favorable to attracting commercial enterprises to Georgia and keeping existing businesses within the state.").

63.

Global requests that the Court preserve the status quo by entering a temporary, preliminary, and permanent injunction against Joseph to restrain and enjoin her from (a) continuing to solicit Global's customers for the benefit of PayNation or performing any services for PayNation that would violate or potentially violate the restrictions on solicitation contained in the 2019 Stock

Award and (b) taking any other action that would violate the restrictive covenants contained in the 2019 Stock Award.

64.

Separately, Global is also entitled to an injunction against Joseph prohibiting her further use or disclosure of Global's trade secrets.

65.

Global has a substantial likelihood of success on the merits of the underlying trade secrets claim and will suffer irreparable harm through Joseph's continued use and disclosure of Global's confidential and trade secret information in the absence of an injunction.

66.

The harm suffered by Global in the absence of an injunction would exceed the harm suffered by Joseph if the injunction is issued.

67.

An injunction against Joseph would not disserve the public interest,

68.

Accordingly, separate from its rights under the 2019 Stock Award and pursuant to O.C.G.A. § 10-1-762 and the Court's inherent authority, Global is entitled to preliminary and permanent injunctive relief against Joseph to prevent further use and misappropriation of its trade secret information.

## **COUNT VI**

## **ATTORNEYS' FEES**

69.

Global incorporates by reference the allegations contained in paragraphs 1 through 68

above as if restated verbatim.

70.

Global is entitled to recover its attorneys' fees and other reasonable expenses incurred in connection with this litigation pursuant to the 2019 Stock Award and pursuant to O.C.G.A. § 13-6-11 because Joseph has acted in bad faith and been stubbornly litigious in her performance of the 2019 Stock Award and has caused Global unnecessary trouble and expense.

**PRAYER FOR RELIEF**

WHEREFORE, Global prays for the following relief:

(a)     A bench trial on all issues so triable;

(b)     Judgment to be entered in favor of Global and against Joseph for damages in an amount greater than $75,000 to be determined at trial, including pre- and post-judgment interest;

(c)     For preliminary and permanent injunctive relief as follows:

(1) Prohibiting Joseph from soliciting, recruiting, inducing, or engaging any of Global's customers to terminate their relationship with Global in favor of another competitor, including but not limited to PayNation;

(2) Prohibiting Joseph from taking any other action that would violate the restrictive covenants contained in the 2019 Stock Award;

(3) Prohibiting Joseph from using or divulging to any person any of Global's confidential or trade secret information, including, without limitation, any information concerning customers or prospective customers;

(4) Prohibiting Joseph from using or divulging to any person Global's confidential or trade secret information to solicit business from any customer of Global;

20

(5) Prohibiting Joseph from destroying, disposing of, disseminating, altering, or disclosing any information or property in her possession, custody, or control belonging to Global or copied, duplicated, recorded, or otherwise taken from Global or any of Global's subsidiaries or affiliates, including but not limited to, information stored on computers, external hard drives, and/or portable storage devices (including but not limited to any documents, correspondences, emails, flash drives, thumb drives, cloud storage, and/or USB devices);

(6) Prohibiting Joseph from using, destroying, disposing of, disseminating, altering, or disclosing any document or information that in any way relates to the allegations in this suit, including but not limited to, any computers, external hard drives, and/or portable storage devices (including but not limited to any documents, correspondences, emails, flash drives, thumb drives, cloud storage, and/or USB devices);

(7) Prohibiting Joseph from using, destroying, disposing of, disseminating, altering, or disclosing any documents or information that evidences or reflects, or is in any way related or connected to the misappropriation or use by Joseph of any property or information belonging to or copied, duplicated, recorded, or otherwise taken from Global, including its subsidiaries or affiliates;

(8) Ordering Joseph and those in active concert or participation with her to deliver to counsel for Global all documents taken from Global or containing any information belonging or related to Global, including all copies of any documents and/or information that Joseph has provided to, or used for the benefit of PayNation;

(9) Tolling the time periods applicable to the restrictive covenants contained in the 2019 Stock Award beginning from the date Joseph first violated those covenants through the latest dates provided for in the 2019 Stock Award.

(d)     That Global be awarded its expenses of litigation, including reasonable attorneys' fees and costs; and

(e)     The Court award such other and further relief as the Court deems just and appropriate under the circumstances.

Dated: May 24, 2021

*/s/ Nathan D. Chapman*
Nathan D. Chapman (Georgia Bar No. 244954)
Andrew M. Swindle (Georgia Bar No. 522156)
KABAT CHAPMAN & OZMER LLP
171 17th Street NW, Suite 1550
Atlanta, Georgia 30363
Telephone: (404) 400-7300
Facsimile: (404) 400-7333
nchapman@kcozlaw.com
aswindle@kcozlaw.com

*Attorneys for Plaintiff*